IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LEHR'S IRONWORKS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:11-CV-431-MEF |
| vs. ) | (WO—Do not publish) |
| ) | |
| REMBRANDT ENTERPRISES, INC. and ) | |
| TIM GREEN, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Defendant Rembrandt Enterprises, Inc. removed this case to federal court from the Circuit Court of Henry County, Alabama. (Doc. # 1). Now before the Court is the Motion to Remand (Doc. # 8) filed in response by Plaintiff Lehr's Ironworks, LLC ("Lehr's" or "Lehr's Ironworks"). For the reasons discussed below, the motion is GRANTED.

**II. BACKGROUND**[1]

Lehr's undertook a job removing scrap metal for Cutler Eggs, LLC, from a boneyard behind Cutler's plant in Abbeville, Alabama. The work began in May 2010, and it appears that Lehr's agreed to do the work for some sort of right to keep the scrap metal

---

[1] The facts are cobbled together from the three complaints filed in state court by Lehr's Ironworks (Docs. # 1-4, -8, -11), the Plaintiff's Response to Defendant's First Set of Interrogatories (Doc. # 1-3, Ex. C), and the Declaration of John Lehr (Doc. # 16-1). Rembrandt has not submitted evidence in support of its arguments.

it removed.[2] Shortly after Lehr's began working, a Cutler employee, Tim Green, contacted the company about possibly demolishing the yellow dryer room at Cutler's plant. The parties then agreed that Lehr's would demolish it for $45,000.

Lehr's performed its end of the bargain a few months later and presented its bill to Green for the demolition. Green responded by telling Harry Lehr that his company's accounts payable department wanted an itemized bill before they would pay. After Lehr's provided a more detailed accounting and lowered the bill, Cutler told Lehr's it would have to pay for the job in installments. Lehr's never received any payments, however, and eventually a Cutler representative, Dennis Winnett, claimed that Lehr's *owed Cutler* for the scrap metal it took from the boneyard. As it turns out, Rembrandt Enterprises, Inc., a business organized under Iowa law, had some sort of business relationship with Cutler Eggs at the time.[3] Lehr's alleges it never received notice that Rembrandt, and not Cutler, had undertaken the obligations related to the boneyard and yellow dryer room jobs. Lehr's further claims that it never knew which company—Cutler or Rembrandt—Green represented during negotiations.

The suit began in the Circuit Court of Henry County, Alabama, when Lehr's filed

---

[2] John Lehr's declaration and the original complaint hopelessly contradict each other on this point. According to Lehr, his company kept the scrap metal and he paid Tim Green just over $13,000 for it. Conversely, the complaint alleges that Lehr and Green agreed that Lehr's Ironworks would remove the scrap for $45,000 plus the right to keep the steel for its scrap value.

[3] Once again the documents submitted by the parties fail to shed light on an important factual issue. Various documents refer to "Cutler Eggs, LLC," which suggests a separate legal entity, whereas others suggest that Rembrandt merely did business in Alabama using "Cutler Eggs" as a trade name.

contract and fraud claims against Rembrandt on December 7, 2010. On the contract claim, Lehr's alleged that it entered into an agreement to do demolition work for Rembrandt for $45,000. On its fraud claim, the company alleged that Rembrandt held itself out as Cutler of Abbeville and claimed that Lehr's did not find out about Rembrandt's involvement in the two projects until November 2, 2010.

About four months after filing suit, Lehr's amended its complaint for the first time, adding a claim for negligent breach of contract. About a month after that, Lehr's amended its complaint yet again. In so doing, the company added another fraud claim—this time against Green, an Alabama citizen and the Cutler (or Rembrandt) employee who signed the disputed contract. Significantly, the second amended complaint re-alleged the contract and fraud claims, now asserting them against Green too.[4]

Rembrandt did not sit on its hands in between the time Lehr's filed its first and second amended complaint. Taking steps to set itself up for a successful removal, Rembrandt served discovery requests on Lehr's. (Doc. #14-1, Ex. A.) The requests included interrogatories designed to show that the case met the diversity statute's amount-in-controversy requirement. To this end, the discovery requests asked whether Lehr's sought punitive damages equal to its $45,000 request for compensatory damages. (Doc.

---

[4] In federal court, "[a]s a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading." *Varnes v. Local 91, Glass Bottle Blowers Ass'n*, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982). Here, the case originated in state court, so it would make little sense to apply the federal pleading rules to undercut Lehr's' claims. Besides, Lehr's' later complaints specifically referred to and adopted its earlier pleadings.

#14-1, Ex. A.) Lehr's answered the interrogatories stating that, yes, it did in fact seek at least $45,000 worth of punitive damages. (Doc. #14-1, Ex. B.)

Lehr's found itself in a bind at this point: it had just admitted that the value of its case exceeded the $75,000 amount-in-controversy threshold,[5] which meant Rembrandt could file a removal notice at any moment.[6] Lehr's acted quickly though, amending its complaint to add Green, an Alabama citizen, a mere four days after its admission related to the amount in controversy and before Rembrandt could file its removal notice. Despite Lehr's having successfully joined Green, a non-diverse defendant, Rembrandt removed the action to federal court.

The case now comes before the Court on a remand motion filed by Lehr's. Rembrandt has responded, claiming that Lehr's fraudulently joined Green to defeat federal jurisdiction, to which Lehr's argues that it stated a claim against Green.

---

[5] This conclusion comes from adding the $45,000 claimed as compensatory damages to the $45,000 in punitive damages that Lehr's admitted to seeking in its response to Rembrandt's Second Set of Interrogatories.

[6] "A state court defendant may remove a case to federal court at two procedurally distinct moments in time." *Exum v. State Farm Fire & Cas. Co.*, ___ F. Supp. 2d ___, 2011 WL 5155827, at *2 (M.D. Ala. 2011) (citing 28 U.S.C. § 1446(b)). The first is when subject matter jurisdiction appears on the face of the pleadings. 28 U.S.C. § 1446(b) (paragraph one). The second is when the case becomes removable "after receipt by the defendant, . . . of a copy of . . . other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b) (paragraph two). Because this case only potentially became removable once Rembrandt received the interrogatory responses by Lehr's, paragraph two of § 1446(b) controls. The Court finds that Rembrandt satisfied paragraph two's procedural requirements, and the parties do not dispute this point.

### III. DISCUSSION

Federal courts have limited as opposed to general jurisdiction. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. Of Am.*, 511 U.S. 375, 377 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *Wymbs v. Republican State Executive Comm.*, 719 F.2d 1072, 1076 (11th Cir. 1983). As a result, they only have the power to hear cases over which the Constitution or Congress has given them authority. *See Kokkonen*, 511 U.S. at 377. Equally important, Congress has empowered the federal courts to hear a case removed by a defendant from state to federal court if the plaintiff could have brought the claims in federal court originally. *See* 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). To accomplish a successful removal, the removing defendant bears the burden of showing that a district court has subject matter jurisdiction over an action. *See Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996) (putting the burden of establishing federal jurisdiction on the defendant seeking removal to federal court). And although the Eleventh Circuit favors remanding removed actions where federal jurisdiction is not absolutely clear, *see Burns*, 31 F.3d at 1095, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996).

Rembrandt argues for the propriety of removal by claiming the Court has jurisdiction over this case based on the parties' diversity of citizenship. For this Court to exercise removal jurisdiction based on diversity, the amount in controversy between the

5

parties must exceed $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). The rule also requires "complete diversity" between adverse parties—no plaintiff may share state citizenship with any of the defendants. *See Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1337 (11th Cir. 2002).

At first blush, it appears the Court lacks subject matter jurisdiction here: one of the defendants, Tim Green, has his citizenship in the State of Alabama, and it appears that so too does the plaintiff, Lehr's Ironworks.[7] On the surface, this violates the complete diversity requirement. But Rembrandt invokes the fraudulent joinder doctrine, a judicially created exception to the complete diversity rule that allows a district court to disregard the citizenship of any defendant it finds has been fraudulently joined. *Triggs*, 154 F.3d at 1287; *Bullock v. United Benefit Ins. Co.*, 165 F. Supp. 2d 1255, 1247 (M.D. Ala. 2001) ("When a defendant has been fraudulently joined, the court should disregard his or her citizenship for purposes of determining whether a case is removable based upon diversity of citizenship.").

---

[7] It is also worth noting that Rembrandt's removal notice does not adequately allege Lehr's' citizenship for diversity purposes. The removal notice states, "Plaintiff, Lehr's Ironworks, LLC, is a domestic limited liability company with its principal place of business in Barbour County, Alabama." (Doc. # 1.) This does not suffice. The Eleventh Circuit has held that a limited liability company, like a partnership, "is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comast SCH Holdings, LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004). So "[t]o sufficiently allege the citizenship[] of [an] unincorporated business entit[y], a party must list the citizenships of all the members of the limited liability company." *Id.* Here, Rembrandt failed to do so. And although a party can fix such a defect by amending the defective pleadings, 28 § U.S.C. 1653, doing so here would be futile since diversity is lacking anyway.

## A. Fraudulent joinder standard

The burden the removing party must bear in proving fraudulent joinder is a "heavy one." *Crowe v. Colemen*, 113 F.3d 1536, 1538 (11th Cir. 1997). In fact, "[t]he defendant must make such a showing by clear and convincing evidence." *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006) (citing *Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962)). In addressing this showing, a fraudulent joinder proceeding resembles the procedure "used for ruling on a motion for summary judgment." *Legg v. Wyeth*, 428 F.3d 1317, 1322–23 (11th Cir. 2005). Hence, the court construes all factual disputes and any uncertainties about the current state of the law in favor of the plaintiff. *See id.* at 1323; *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). As for evidence, a court must base its decision on "the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Legg*, 428 F.3d at 1322  (internal citations omitted).

The Eleventh Circuit has found three situations in which a district court can consider a defendant fraudulently joined:

> The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts. In *Tapscott [v. MS Dealer Service Corp.]*, 77 F.3d at 1355 (11th Cir. 1996), a third situation of fraudulent joinder was identified—i.e.,

7

> where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant.

*Triggs*, 154 F.3d at 1287 (internal citations omitted). The first type of fraudulent joinder—the one at issue here—does not require the plaintiff to "have a winning case against the allegedly fraudulent defendant." *Id.* To the contrary, the plaintiff "need only have a [reasonable] possibility of stating a valid cause of action" against the defendant. *Id.*; *Legg*, 428 F.3d at 1325 n.5 ("potential for legal liability must be reasonable, not merely theoretical"). So whether this case gets remanded back to state court turns on whether Alabama law recognizes a cause of action against Green. *See Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983); *Cabalceta*, 883 F.2d at 1561 (stating court should deny remand motion only if convinced there is "no possibility that the plaintiff can establish *any* cause of action against the resident defendant").

### B. Fraudulent joinder analysis

The parties agree that Tim Green signed the contract. But they dispute the significance of his act. On the one hand, Lehr's claims that Green either committed a tort while Rembrandt performed the contract or that fraudulent representations made by Green induced the company to enter into the contract with Rembrandt, thereby providing a non-tort basis for liability against Green. On the other hand, Rembrandt contends that, under Alabama law, there is no tort liability imposed in this situation and that an agent

8

does not incur personal liability on a contract entered into on behalf of his principal.

Rembrandt is only partly correct. True, "agents cannot be held liable for a principal's breach of contract." *Harrell v. Reynolds Metals Co.*, 495 So. 2d 1381, 1389 (Ala. 1986) (citations omitted). And admittedly Alabama does not recognize a tort-like cause of action for the breach of a duty created by contract, because "a negligent failure to perform a contract . . . is but a breach of the contract." *Vines v. Crescent Transit Co.*, 85 So. 2d 436, 440 (Ala. 1956); *see also Barber v. Business Prods. Ctr.*, 677 So. 2d 223, 228 (Ala. 1996) ("a mere failure to perform a contractual obligation is not a tort"); *Am. Dist. Tel. Co. of Ala. v. Roberts & Son*, 122 So. 837, 840 (Ala. 1929) (holding plaintiff cannot maintain tort action where alleged negligence consists of failure to perform a contractual obligation). Lehr's attempt to plead artfully by injecting tort terminology into its complaint (*negligent* breach, *negligent* performance) thus fails as a matter of law.[8]

Even so, the general rule barring agent liability for his principal's breach has an exception. Indeed, Alabama law provides that "only the principal is bound and subject to suit on [a] contract" *unless* "the agent fails to disclose the fact that he acts for a principal or fails to disclose the identify of his principal." *Willis v. Parker*, 814 So. 2d 857, 864 (Ala. 2001) (quoting *McLeod v. Thompson*, 615 So. 2d 90, 92 (Ala. Civ. App. 1992)).

---

[8] If a defendant-agent breaches the duty of reasonable care—the duty one owes to another in his day-to-day affairs—which, in turn, causes personal injury or property damages, the injured plaintiff can sue in tort for the breach. *Vines v. Crescent Transit Co.*, 85 So. 2d 436, 440 (Ala. 1956). But Lehr's has failed to allege any facts suggesting that Green caused it either "personal injury or property damage," *id.*, which means the company has failed to state a tort claim against Green.

9

Put another way, "if an agent acting within his authority enters a contract on behalf of an undisclosed principal, the agent is liable on the contract." *Lee v. YES of Russellville, Inc.*, 784 So. 2d 1022, 1027 (Ala. 2000) (citing *B & M Homes, Inc. v. Hogan*, 376 So. 2d 667 (Ala. 1979); *Restatement (Second) of Agency* § 186 (1958)).

Here, Lehr's alleged in its initial complaint that Green failed to disclose that he worked for Rembrandt and that "[a]t no time during th[e] process was Lehr told he was working for Rembrandt Enterprises, Inc." (Doc. # 1-4.) Although Green would not face personal liability had Rembrandt merely done business in Alabama as "Cutler Eggs," Lehr's claimed that Cutler existed as a separate limited liability corporation. (Doc. # 1-8.) Rembrandt submitted no evidence to the contrary nor did it attempt to clarify the relationship between it and Cutler by submitting evidence.

Given Lehr's allegations, Rembrandt's failure to rebut them, and the need to construe all factual and legal disputes in favor of the plaintiff, *Legg*, 428 F.3d at 1323, the Court finds a reasonable possibility that Lehr's stated a valid cause of action against Green under Alabama law. *See Triggs*, 154 F.3d at 1287; *Legg*, 428 F.3d at 1325 n.5. In other words, if Green held himself out as working for Cutler, failed to disclose his relationship with Rembrandt, and Cutler was in fact a distinct entity, Lehr's has a colorable claim against Green under Alabama law. *See Willis*, 814 So. 2d at 864. Rembrandt has therefore failed to show by clear and convincing evidence that Lehr's fraudulently joined Green. Thus, the Court must consider Green's citizenship in determining whether it has subject matter jurisdiction over the action.

## IV. Conclusion

Because Lehr's Ironworks stated a potentially valid cause of action against Tim Green, a citizen of the same state, the parties do not comply with the complete diversity rule. As a result, this Court lacks subject matter jurisdiction over Lehr's' claims. Accordingly, it is hereby ORDERED that the plaintiff's Motion to Remand (Doc. # 8) is GRANTED. The request for oral argument made by Rembrandt is DENIED.

The case is hereby REMANDED to the Circuit Court of Henry County, Alabama, and the Clerk is DIRECTED to take appropriate steps to effect the remand. The pending motions to dismiss filed by Rembrandt Enterprises (Doc. # 1-10) and Tim Green (Doc. # 11) are left for resolution by the state court.

DONE this the 13th day of December, 2011.

                                                /s/ Mark E. Fuller
                                        UNITED STATES DISTRICT JUDGE